707 A.2d 438

**The BANK OF GLEN BURNIE**

v.

**ELKRIDGE BANK.**

**No. 1062, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

April 3, 1998.

Reconsideration Denied April 28, 1998.

John A. Scaldara (Donald J. Walsh and Scaldara & Potter, L.L.P., on the brief), Baltimore, for appellant.

Gerson B. Mehlman (Mehlman & Greenblatt, L.L.C., on the brief), Baltimore, for appellee.

Argued before MOYLAN and DAVIS, JJ., and ROSALYN B. BELL, Judge (retired), Specially Assigned.

MOYLAN, Judge.

The appellant, the Bank of Glen Burnie ("Glen Burnie"), challenges an order issued by Judge J. Norris Byrnes of the Circuit Court for Baltimore County, whereby summary judgment was granted in favor of the appellee, Elkridge Bank ("Elkridge"). On appeal, the appellant raises the following six issues which have been restated for clarity:

1. Did the trial court err in finding the imposter rule inapplicable to the instant case?

2. Did the trial court err in finding that there was no evidence that Beal GMC participated in the fraudulent scheme and thus, Elkridge was not precluded from denying the forged endorsements?

3. Did the trial court err in finding that the intended payee defense was inapplicable?

4. Did the trial court err in finding that Elkridge did not ratify the endorsements?

5. Did the trial court err in finding that the unauthorized endorsements, rather than a fraudulent scheme, were the proximate cause of the Elkridge's damages?

6. Did the trial court err in concluding that the damages recoverable from Glen Burnie for breach of warranty were not to be reduced to the value of the security interest Elkridge lost by virtue of the allegedly unauthorized endorsements?

### Factual and Procedural Background

Elkridge Bank agreed to lend Oceanic Ltd., Inc. ("Oceanic"), a customer of the Bank of Glen Burnie, funds to purchase three trucks. As part of a fraudulent scheme, the president of Oceanic, Brian Davis, told Elkridge that it would be purchasing the trucks from Beal GMC Truck, Inc. ("Beal GMC").[1] Beal GMC was also a customer of Glen Burnie.

---

1. Oceanic was involved in a fraudulent scheme of obtaining multiple financing and titling on its vehicles.

To ensure that the funds it was providing were used to purchase the trucks and that its name would appear on the title as lienholder, Elkridge issued two joint checks made payable to Oceanic, the purchaser of the trucks, and to Beal GMC Truck, Inc., the seller. The first check for $251,811 was dated June 22, 1995, and the second check for $92,054 was dated July 7, 1995.

Oceanic presented the checks made payable to it and to Beal GMC to Glen Burnie. It is undisputed that Beal GMC never endorsed the checks and that the Beal endorsements were forgeries. Pursuant to Glen Burnie's internal procedures, it was required to verify the legitimacy of Beal's endorsement as Beal was a customer of the bank. Glen Burnie took the checks with the forged endorsements and deposited the funds into Oceanic's account. Glen Burnie then presented the checks to Elkridge, which paid the sums over to Glen Burnie.

Less than six months later, Oceanic was placed in involuntary bankruptcy. At that time, Elkridge learned that the checks were never received by Beal GMC and that it was not listed as a lienholder on the titles. In March 1996, Elkridge filed suit against Glen Burnie in the Circuit Court for Baltimore County. The Complaint alleged that Glen Burnie breached certain warranties under § 4–207 of Maryland's Uniform Commercial Code ("UCC"), Md. Code, Com. Law § 4–207 (1993), when it negotiated checks containing forged endorsements. The parties filed Cross Motions for Summary Judgment. On May 28, 1997, Judge Byrnes heard oral argument and entered summary judgment in favor of Elkridge. From that judgment, Glen Burnie noted a timely appeal.

### Discussion

In *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993), Chief Judge Murphy set forth the standard of review to be used when determining whether a summary judgment motion was properly granted:

A trial court may grant summary judgment when there is no genuine dispute as to any material fact and the moving

party is entitled to judgment as a matter of law, Md. Rule 2–501(e). Under this rule, "a trial court determines issues of law; it makes rulings as a matter of law, resolving no disputed issues of fact." *Beatty v. Trailmaster*, 330 Md. 726, 737, 625 A.2d 1005 (1993). In reviewing a disposition by summary judgment, an appellate court resolves all inferences against the party making the motion. *Rosenberg v. Helinski*, 328 Md. 664, 674, 616 A.2d 866 (1992). Because a trial court decides issues of law when granting a summary judgment, the standard of appellate review is whether the trial court was legally correct. *Beatty*, 330 Md. at 737, 625 A.2d 1005; *Rosenberg*, 328 Md. at 674, 616 A.2d 866; *Heat & Power v. Air Products*, 320 Md. 584, 592, 578 A.2d 1202 (1990).

Applying this standard we find that the trial court did not err in granting summary judgment in favor of Elkridge.

Glen Burnie first contends that the imposter rule precludes recovery by Elkridge for breach of warranty under the UCC. Specifically, Glen Burnie argues that, through a series of deceptions and the failure of Elkridge diligently to investigate its loans, Oceanic managed to impersonate Beal GMC's involvement and induced Elkridge to issue the checks to Oceanic. Accordingly, Glen Burnie asserts that under Section 3–405 of the UCC, this impersonation shifts the loss to the appellee and bars it from recovering from the appellant. We are not persuaded.

Under Maryland law, "the burden of loss from a forged endorsement is generally placed on the person who dealt with and took the instrument in question from the forger." *Hartford Fire Ins. Co. v. Maryland National Bank*, 341 Md. 408, 671 A.2d 22 (1996). When a collecting bank, such as Glen Burnie, presents a check with an endorsement to the payor bank, such as Elkridge, the collecting bank warrants to the payor bank that it has good title to the instrument. Md.Code, Com. Law § 4–207(1)(a). An instrument paid over a forged endorsement, however, does not convey good title to the instrument to the collecting bank. Thus, as stated by the

Court of Appeals in *Bank of Glen Burnie v. Loyola Federal Savings Bank*, 336 Md. 331, 648 A.2d 453 (1994):

> Because a forged endorsement generally does not confer good title, the drawee bank can recover upstream under a breach of warranty claim "against any person who presented a check bearing a forged endorsement."

Glen Burnie relies on § 3-405 of the UCC, known as the "imposter rule," as an exception to the general rule. Section 3-405 provides in pertinent part that

> (1) an endorsement by any person in the name of the named payee is effective if

> (a) An imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.

The effect of this section is to make the forged signature valid as to the party who takes from the forger and all subsequent parties in the chain of collection. "The position here taken is that the loss, regardless of the type of fraud which a particular imposter has committed, should fall upon the maker or drawer." Md.Code, Com. Law § 3-405, Comment 2 (1992).

Glen Burnie contends that Oceanic impersonated Beal GMC throughout the transaction and that this impersonation induced Elkridge to make the loan and issue the checks by: 1) forwarding bogus invoices to the appellant; 2) writing letters on Beal GMC letterhead and forging the signature of Beal; 3) forwarding bogus certificates of origin inaccurately reflecting that Beal GMC had recorded Elkridge's interest; and 4) by altering its fax machine to make it appear that documents faxed to Elkridge were faxes from Beal GMC.

Reviewing this evidence in the light most favorable to Glen Burnie, we clearly find that Oceanic misrepresented its intention to Elkridge and carefully covered its tracks. In order for the "imposter rule" to apply, however, the forger must "impersonate" and not merely misrepresent. "Imposter" is defined as "one who poses as another to obtain benefits

under a negotiable instrument." Black's Law Dictionary (6th ed.1991). There is no evidence on the record to support a finding that Oceanic represented to Elkridge that it was in fact Beal GMC or that it had the authority to negotiate for Beal GMC. Thus, the fact that Oceanic used forged paperwork to obtain the loan by misrepresenting its intent does not implicate the imposter rule.

Elkridge did not issue the check to Oceanic believing it was issuing the check to Beal GMC. There was no evidence presented to indicate that Beal GMC was required to do anything or sign any documents before Elkridge would approve the loan to Oceanic. Although Elkridge believed Oceanic would be purchasing trucks from Beal GMC and issued the checks in the names of both Oceanic and Beal, Beal was not a party to the loan.

Additionally, we are not persuaded by *Minster State Bank v. BayBank Middlesex,* 414 Mass. 831, 611 N.E.2d 200 (1993), a Massachusetts case relied upon by Glen Burnie and we question its applicability, as did the trial court, to our situation. *Minster* involved a husband who applied for a loan allegedly for himself and his wife. During the process of obtaining the loan, the husband forged his wife's signature on loan documents, including the Promissory Note which was to be executed by him and his wife. The Bank issued a check payable to the order of both the husband and wife. The husband forged his wife's name and deposited the check into his own business account. The wife had no knowledge of the loan transaction, the note, or the check. The trial judge and an intermediate appellate court found that the imposter ruled applied.

The facts in the instant case are much different than in the *Minster* case. As the trial court stated, in *Minster,* the husband represented to the bank that his wife was also a borrower of the money. In this case Oceanic was the borrower of the money, not Beal GMC, and it was never represented that Beal GMC was the borrower of the money. Accordingly, we see no error in the trial court's granting of summary

judgment with regard to the inapplicability of the imposter rule in this case.[2]

■■ Glen Burnie's second contention is that the trial court erred in finding that there was no evidence that Beal GMC participated in the fraudulent scheme and thus, Elkridge was not precluded from denying the forged endorsements. In its brief Glen Burnie argues that "the facts reveal the probability that Beal GMC was involved with Oceanic in its scheme to obtain multiple titles and financing and that its participation in this scheme render its otherwise unauthorized signature effective." We disagree.

While Glen Burnie argues that Beal GMC was probably involved in the scheme, the facts as alleged by Glen Burnie do not establish that Beal GMC was actually involved with the specific transactions in this case. Moreover, as pointed out by the trial court, Beal GMC denied any knowledge of the scheme and Glen Burnie failed to produce any evidence that would lead one to believe that the representative of Beal GMC was not telling truth. Accordingly, we find that the trial court did not err in its finding.

■■ With regard to Glen Burnie's third contention, we find no error in the trial court's determination that the intended

---

**2.** It is interesting to note that as of January 1, 1997, Articles 3 and 4 of the Maryland Uniform Commercial Code were revised. While these revisions are inapplicable to the instant case, § 3–404 of the revised code, the new "imposter rule" section, specifically addresses the exact situation we have here by adding § 3–404(d). Section 3–404(d) provides that:

[I]f a person paying the instrument or taking it for value or for collection *fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.*

Thus, under the revised UCC, the appellant would be liable to Elkridge even if Oceanic's actions were found to be an impersonation of Beal GMC due to its failure to exercise ordinary care in taking the check. As stated earlier, both Oceanic and Beal GMC were customers of the appellant. As such the appellant was required to check the validity of the endorsements prior to taking the checks.

payee defense was inapplicable in this case. The trial court correctly found that Beal GMC, and not Oceanic, was the intended payee. Elkridge testified that it made the checks out to both Oceanic and to Beal to ensure that Beal would receive the funds as payment for the trucks, and Glen Burnie failed to produce any evidence to indicate that Elkridge intended otherwise.

Next, Glen Burnie contends that Elkridge ratified any improper payment of the checks by Glen Burnie when it accepted payments from Oceanic on the loans. We find that the trial court did not err in finding that no ratification took place. Elkridge was not aware of the forged endorsement or the fraudulent scheme until after Oceanic was placed in involuntary bankruptcy. Thus, its acceptance of loan repayments prior to its knowledge of the forged endorsements cannot ratify the improper payment by Glen Burnie.

Glen Burnie's fifth and sixth contentions are equally without merit. As the trial court correctly stated:

There is no dispute of fact that Mr. Davis forged the signature of Beal GMC, and ... because of that forgery the Bank of Glen Burnie did fail in its warranty back to Elkridge.

[T]he amount of the loss is not in dispute. There is an argument made to me that it should be less than $284,-126.08, but in my judgment under the facts of this case that is their loss as a direct result of the failure of warranties by the Bank of Glen Burnie.

Accordingly, we find that the trial court did not err in awarding summary judgment in favor of Elkridge.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.*