907 A.2d 373

**MOUNT VERNON PROPERTIES, LLC**

v.

**BRANCH BANKING AND TRUST COMPANY t/a BB & T.**

**No. 399, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Sept. 14, 2006.

---

**9.** "You got to know when to hold 'em;
know when to fold em'.
know when to walk away;
know when to run . . ."
Kenny Rogers, *The Gambler.*

458

Troy C. Swanson, Bel Air, for appellant.

Dennis P. McGlone (G. Brooks Liswell, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, on brief), Baltimore, for appellee.

Panel DAVIS, EYLER, JAMES R., MEREDITH, JJ.

**460**

MEREDITH, J.

Mount Vernon Properties, LLC ("Mount Vernon" or appellant) appeals a summary judgment granted by the Circuit Court for Baltimore City in favor of Branch Banking and Trust Company ("BB & T" or appellee). Mount Vernon is a mortgage lender and the drawer of a check drawn on its account at BB & T, made payable to Classic Title Company ("Classic") in the amount of $32,993, for a real estate closing. Mount Vernon gave possession of the check to Ernie Francis, who engaged in a series of transactions that resulted in Mount Vernon having its BB & T account debited for the $32,993 check, but not receiving the mortgage lien it expected. In the transactions at issue, Francis evidently took the $32,993 check, drawn by Mount Vernon and payable to Classic, to BB & T, the drawee of the check, and exchanged it for a teller's check drawn by BB & T, payable to the same payee in the same amount.

The issue at the heart of this appeal is whether BB & T was entitled to judgment that, as a matter of law, BB & T properly charged Mount Vernon's account for $32,993.[1] Because there

_____

1. The questions presented by the appellant, which we have edited for clarity, but, alas, not for brevity, are:
 1. Where BB & T adopts all of the facts alleged in the complaint to support its alternative motion for summary judgment, may Mount Vernon use those same undisputed material facts against BB & T to support Mount Vernon's cross motion for summary judgment?
 2. Does the complaint state a claim for strict liability under MCC § 4–401?
 3. Where BB & T paid its customer's check on a forged indorsement in violation of MCC § 4–401 and the check proceeds are laundered through two additional checks, is there a causal connection between BB & T's violation and the customer's loss if the proceeds reach the intended payee but are used for the sole benefit of the forger?
 4. Did BB & T prove the elements required to support the Imposter Affirmative Defense pursuant to MCC § 3–404?
 5. Did BB & T act in "good faith" pursuant to MCC § 3–103(4) when it failed to inquire whether a stranger had the authority to indorse Mount Vernon's check made payable to an existing corporate payee in the amount of $32,993?
 6. Did BB & T prove facts supporting the Employee Defense pursuant to MCC § 3–405?
 7. Does Count II of the complaint state a claim for breach of contract?

are genuine disputes of fact that are material to the resolution of the liability issues raised by Mount Vernon in three of the four counts in the complaint, we shall vacate the judgment of the circuit court on the counts of strict liability under the Maryland Commercial Code, breach of contract, and negligence, and remand the case for further proceedings. We shall, however, affirm the judgment of the circuit court on the count alleging breach of the duty of good faith and fair dealing because no such independent cause of action exists in Maryland. Because we are remanding the case for further proceedings, we need not address the other questions raised by the parties.

### Facts and Procedural Background

With the notable exception of the nature of the role that Francis played in these transactions and the nature of Francis's relationship with Mount Vernon, the facts are straightforward and undisputed. During January 2004, Mount Vernon was approached by Ernie Francis about lending money to Thomas Jackson to enable Jackson to buy property. Francis appears to have represented himself as an agent of ASMC, LLC, a mortgage broker unrelated to Mount Vernon. Mount Vernon agreed to provide short term financing to Jackson.

On April 6, 2004, Mount Vernon drew a check on its account at BB & T in the amount of $32,993 (the "Mount Vernon Check"). The Mount Vernon Check was made payable to

---

8. Does Count III of the complaint state a claim for negligence?

9. Does Count IV of the complaint state a claim for breach of the implied covenant of good faith and fair dealing?

10. Did the circuit court err as a matter of law in failing to strike BB & T's alleged Financial Services Contract where the alleged contract postdated the corresponding signature card by two years?

11. Did the circuit court err as a matter of law by dismissing Mount Vernon's complaint and entering summary judgment in favor of BB & T and against Mount Vernon?

12. Did the circuit court err as a matter of law by failing to grant money judgment in favor of Mount Vernon and against BB & T in the amount of $32,993 plus prejudgment interest?

13. Did the circuit court err as a matter of law by denying Mount Vernon's Motion to Alter or Amend Judgment?

Classic, the title company that was handling the settlement on Jackson's real estate purchase. Under circumstances that are not made clear in the documents in the record, Mount Vernon gave the check to Francis to deliver to Classic. Mount Vernon alleged in the complaint: "Plaintiff gave the [Mount] Vernon Check to Francis to deliver to Classic Title who was to conduct the closing on the Property [being purchased by Jackson]." Although BB & T argues that Francis must have been either an impostor for the payee or an employee of Mount Vernon, neither party filed any affidavit or other evidentiary material that clarified the circumstances under which Francis came into possession of the Mount Vernon Check.

Mount Vernon is the only party involved in this case that had an account at BB & T; neither Classic, nor Francis, nor ASMC had a banking relationship with BB & T. In an affidavit, Classic's president stated that Francis had no authority to indorse the BB & T Check on behalf of Classic, but the affidavit made no mention of the Mount Vernon Check that was used to acquire the BB & T check.

There is little dispute, however, regarding what Francis did with the Mount Vernon Check that was payable to Classic. Rather than deliver the check to Classic, Francis instead took the check to a BB & T branch office, apparently forged the indorsement of Classic on the check, and exchanged the Mount Vernon Check for a "teller's check" drawn by BB & T (the "BB & T Check") payable to Classic in the same amount as the Mount Vernon Check ($32,993).[2] BB & T charged Mount Vernon's account for $32,993.

Francis next took the BB & T Check to Wachovia Bank, where he apparently again forged Classic's indorsement. Presumably at Francis's request, Wachovia deposited the check

---

2. A teller's check is similar to a cashier's check, but the check is drawn by one bank on a second bank, rather than on itself. 9 C.J.S. *Banks and Banking* § 455. In the instant case, BB & T drew a check on an account maintained by BB & T at Boston Safe Deposit and Trust Company, rather than on BB & T itself.

into ASMC's Wachovia account. On April 14, 2004, Wachovia issued to Francis an "official check" in the amount of $27,666 (the "Wachovia Check"), again payable to Classic, and $5,327 remained in ASMC's account at Wachovia.

Francis next delivered the Wachovia Check in the amount of $27,666 to Classic, and Jackson's purchase of the property settled. It appears, however, that Francis caused the mortgage documents to be altered to make ASMC, rather than Mount Vernon, the mortgagee of the property which Mount Vernon had understood it was financing for Jackson. As a result of Francis's actions, when the Jackson settlement was concluded, Mount Vernon had been charged $32,993, ASMC had $5,327 of Mount Vernon's funds in its account at Wachovia, and Jackson owed $27,666 on a mortgage to ASMC, rather than to Mount Vernon.

Mount Vernon filed suit against BB & T alone, seeking to recover the amount of its check ($32,993) plus prejudgment interest, and asserting four alternative theories in four counts: strict liability under the Maryland Commercial Code, breach of contract, negligence, and breach of the duty of good faith and fair dealing. BB & T answered the complaint by filing a "Motion to Dismiss or in the Alternative for Summary Judgment." Mount Vernon filed a "Cross Motion for Summary Judgment and Response to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment."

After the parties filed additional papers, the circuit court granted summary judgment in favor of BB & T. The circuit court subsequently denied Mount Vernon's Motion to Alter or Amend Judgment. Mount Vernon appealed.

## Analysis

### I. The standard of review

Our task in reviewing the grant of a motion for summary judgment is to conduct a *de novo* review of the motion and response to determine whether they "show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a

matter of law." Maryland Rule 2–501(f). We summarized the standard for appellate review of a court's grant of summary judgment in *Meeks v. Dashiell,* 166 Md.App. 415, 426–27, 890 A.2d 779, *cert. granted,* 393 Md. 245, 900 A.2d 751 (2006), in which we stated:

> When a motion court grants a motion for summary judgment, we first review the record to determine whether there was a genuine dispute as to any material fact. In making that assessment, all facts, including all reasonable inferences therefrom, must be viewed in a light most favorable to the non-moving party. *Teamsters v. Corroon Corp., supra,* 369 Md. [724, 728, 802 A.2d 1050 (2002)]. Unless the dispositive facts are free from genuine dispute, the motion court must deny the motion. *Frederick Road v. Brown & Sturm,* 360 Md. 76, 93–94, 756 A.2d 963 (2000); *Pittman v. Atlantic Realty,* 359 Md. 513, 537–39, 754 A.2d 1030 (2000). "In reviewing the propriety of [a judgment granting] a summary judgment motion, we cannot consider evidence or claims asserted after the motion court's ruling." *Mayor and City Council of Baltimore v. Ross,* 365 Md. 351, 361, 779 A.2d 380 (2001). *See also Flaherty v. Weinberg,* 303 Md. 116, 139 n. 9, 492 A.2d 618 (1985) (appellate court disregards documents that were not before the court at the time of the ruling on the demurrer "[r]egardless of the persuasiveness of the documents"). *Cf.* Maryland Rule 2–501(f) ("The court shall enter judgment in favor of or against the moving party *if the motion and response show* that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.") (emphasis added).

The Court of Appeals similarly explained in *Matthews v. Howell,* 359 Md. 152, 161, 753 A.2d 69 (2000):

> The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried. [Citations omitted.] In reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists and, if not,

whether the movant is entitled to judgment as a matter of law.

*See King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)("A material fact is a fact the resolution of which will somehow affect the outcome of the case.").

As we explain below, because there is a genuine dispute as to a material fact—namely, the role that Francis played in the scheme—we conclude that the circuit court improperly granted summary judgment on the counts of strict liability under the Maryland Commercial Code, breach of contract, and negligence. Mount Vernon contends that Francis was neither an "impostor" of Classic nor an employee of Mount Vernon, while BB & T asserts the exact opposite. Because, as we explain below, the outcome of each of these three counts in Mount Vernon's complaint depends upon whether Francis was, or was not, either an impostor of Classic or an employee of Mount Vernon, Francis's role and relationship to Mount Vernon are disputed material facts, and summary judgment should not have been entered for BB & T. We also note that the facts surrounding BB & T's acceptance of the check on which Classic's indorsement was forged were not sufficiently developed in the record for the court to rule as a matter of law that BB & T exercised the requisite degree of ordinary care required in order to take advantage of either the impostor defense or the responsible employee defense.[3]

## II. Strict Liability Under Maryland Commercial Code

### A. The General Rule

BB & T contends that it properly charged Mount Vernon for the amount in which its check was drawn in accordance with the Maryland Commercial Code. Maryland Code (1975, 2002 Repl.Vol.), Commercial Law Article ("MCC"), § 4–401(a) provides:

---

**3.** Mount Vernon urges us to rule that the circuit erred in failing to grant its Cross Motion for Summary Judgment. The factual disputes regarding Francis's role in these transactions precluded the entry of summary judgment in favor of Mount Vernon.

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. Any item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.

Relevant to this case, however, Comment 1 to MCC § 4–101 states: "An item containing a forged drawer's signature or forged indorsement is not properly payable." *See also Messing v. Bank of America,* 373 Md. 672, 701, 821 A.2d 22 ("when a bank cashes a check over the counter, it assumes the risk that it may suffer losses for counterfeit documents, forged endorsements, or forged or altered checks").

There does not appear to be a dispute between the parties as to whether the Mount Vernon Check was an "item," nor does there appear to be a dispute as to whether the Mount Vernon Check was fraudulently indorsed by Francis. Rather, the dispute centers on whether the Mount Vernon Check was "properly payable."

### B. BB & T's Affirmative Defenses

BB & T contends that, notwithstanding Francis's forgery of Classic's indorsement, the Mount Vernon Check was "properly payable" under the provisions of MCC § 3–404 (the "impostor" defense) and/or MCC § 3–405 (the "responsible employee" defense).

### 1. The Impostor Defense

BB & T contends that Francis was an "impostor," and therefore, § 3–404(a) provides that Francis's indorsement—even if fraudulent—of the Mount Vernon Check "is effective as the indorsement of the payee." While a finder of fact may ultimately agree with BB & T's contention, the facts are not undisputed that Francis was an impostor within the terms of § 3–404(a). Section 3–404(a) reads in its entirety:

> *If an imposter,* by use of the mails or otherwise, *induces the issuer of an instrument to issue the instrument to the*

*imposter,* or to a person acting in concert with the imposter, *by impersonating the payee of the instrument or a person authorized to act for the payee,* an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

(Emphasis added).

Assuming, *arguendo,* that Francis was an impostor of some sort, § 3–404(a) provides that he must also have "impersonat[ed] *the payee* of the instrument [*i.e.,* Classic] or a person authorized to act for the payee," in order for his indorsement to be "effective as the indorsement of the payee" under § 3–404(a). *See Bank of Glen Burnie v. Elkridge,* 120 Md.App. 402, 408, 707 A.2d 438 ("In order for the 'imposter rule' to apply, however, the forger must 'impersonate' and not merely misrepresent."), *cert. denied,* 351 Md. 3, 715 A.2d 962 (1998). Although the record supports an inference that Francis forged Classic's indorsement on the Mount Vernon Check, we are unable to find in the record any evidence that Francis—the alleged impostor—induced the issuer (*i.e.,* Mount Vernon) to give him the check by impersonating the payee (Classic) or someone authorized to act on Classic's behalf. It is possible that such evidence may eventually surface, but there was no such evidence before the court at the time it ruled on the motions for summary judgment. In the absence of such evidence, BB & T is not entitled to judgment based upon MCC § 3–404(a).

Further, as we pointed out in *Bank of Glen Burnie, supra,* 120 Md.App. at 410 n. 2, 707 A.2d 438, a 1996 amendment to the impostor rule added a requirement that the party in BB & T's position "exercise ordinary care" in order to take advantage of the defense. MCC § 3–404(d). The facts before the motion court did not establish as a matter of law whether BB & T did, or did not, meet this standard at the time it accepted the forged indorsement on the Mount Vernon check. For this additional reason, the motion court should not have entered summary judgment in this case.

## 2. The Responsible Employee Defense

BB & T argues in the alternative that, even if Francis was not an impostor who held himself out to Mount Vernon as an employee or agent of Classic, the payee of the Mount Vernon Check, Francis was an employee of, or independent contractor acting for, Mount Vernon, and therefore covered by the responsible employee fraud rules in § 3–405. MCC § 3–405 provides that if an employer entrusts an instrument to a responsible employee, and that employee fraudulently indorses the instrument, the indorsement may be effective. The statute states, in relevant part:

(a)(1): "Employee" includes an independent contractor and employee of an independent contractor hired by the employer.

(a)(2): "Fraudulent indorsement" means . . . in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

(a)(3): "Responsibility" with respect to instruments means authority . . . (iii) to prepare or process instruments for issue in the name of the employer, . . . (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

(b): For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee and the employee . . . makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made

in the name of that person. If the person paying the instrument or taking it for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

■ The undisputed facts in the record did not establish whether Francis was an "employee" of, or independent contractor acting for, Mount Vernon. And, even if we were to assume, *arguendo*, that Francis was an employee of Mount Vernon, there were no facts in the record to establish without dispute that Francis met the other conditions of MCC § 3–405(a)(3) and (b) in order to make Francis's indorsement effective and the Mount Vernon Check "properly payable." For example, § 3–405(a)(3) specifies that the "responsibility" required for the responsible employee defense to be applicable "does not include authority that merely allows an employee to have access to instruments ... that are being ... transported or are part of ... outgoing mail, or similar access." There was no evidence before the motion court that Francis's authority with respect to the Mount Vernon Check exceeded such access. And MCC § 3–403(b) requires an additional factual determination that the person paying the instrument (*i.e.*, BB & T) "exercise[d] ordinary care." Cf. *Bank of Glen Burnie, supra*, 120 Md.App. at 410 n. 2, 707 A.2d 438 (requirement of ordinary care applicable to impostor defense). Because neither Francis nor Classic had any banking relationship with BB & T, there remains a factual issue as to whether BB & T did, or did not, meet that standard when it paid the Mount Vernon Check.

As was the case with the impostor defense, BB & T articulates suspicions rather than presenting evidence of undisputed facts. In short, BB & T poses the false choice of only two alternatives (that Francis either posed as Classic, in which case his indorsement was effective under MCC § 3–404, or was a responsible employee of Mount Vernon, in which case

his indorsement was effective under MCC § 3–405). There are simply insufficient facts in the record to establish definitively what role Francis played. Because Francis was not necessarily either an impostor or a responsible employee, his indorsement may not have been effective under either § 3–404 or § 3–405, and, therefore, the Mount Vernon Check may not have been properly payable by BB & T. And, in either event, whether BB & T met the standard of ordinary care remains an open question.

Because the fact finder must yet decide these issues, summary judgment was inappropriate, and we must remand the case for further proceedings.

### III. Breach of Contract

■ The count alleging breach of contract is inexorably interwoven with the strict liability claim, because each count will fail if a fact finder concludes that Francis's indorsement of the Mount Vernon Check was effective. The contractual duty alleged by Mount Vernon in the breach of contract count is that BB & T was "contractually required to only charge items that were properly payable to Plaintiff's checking account." As discussed above, additional facts are required to determine whether the Mount Vernon Check was "properly payable." Given that this element of the cause of action is the subject of a genuine dispute of material facts, summary judgment on the breach of contract claim should not have been entered in favor of BB & T.

### IV. Negligence

■ In the count alleging negligence, Mount Vernon identified two duties that BB & T allegedly breached. First, Mount Vernon alleges that BB & T "owed a duty to [Mount Vernon] to only charge items against [Mount Vernon's] [c]hecking [a]ccount that were properly payable." For the same reasons as outlined in our discussion of the breach of contract count in Section III above, the outcome of the count alleging strict liability under the Maryland Commercial Code will determine

whether BB & T breached the duty to charge only "properly payable" items against Mount Vernon's account.

Second, Mount Vernon alleged in the negligence count that, in addition to BB & T's duty to charge only properly payable items, BB & T had a duty to "exercise ordinary care to discover the forged indorsement on the Mt. Vernon Check." Both § 3–404(d) and § 3–405(b) have virtually identical language addressing the requirement for a bank to use ordinary care with respect to paying a check:

> If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.[4]

Like the other Mount Vernon claims addressed above, a claim based upon the duty for BB & T to use ordinary care is also dependent upon resolution of the factual issues that will determine the outcome of the strict liability count.

Because genuine disputes of material fact exist, summary judgment should not have been entered in favor of BB & T on the negligence count.

## V. Breach of Duty of Good Faith and Fair Dealing

 Notwithstanding the factual disputes that precluded the entry of summary judgment in the above three counts, we affirm the circuit court's holding that there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing. Although the issue has not been specifically addressed by the Maryland appellate

---

**4.** The language quoted is from MCC § 3–405(b). The language of MCC § 3–404(d) is identical with two minor exceptions (it refers to "a person" rather than "the person," and it uses "payment of the instrument" rather than "fraud" in the text). Neither variation affects our analysis.

courts, we agree with the circuit court that no such action at law exists in Maryland.

We find persuasive the reasoning of the United States District Court in *Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F.Supp.2d 785, 794 (D.Md. 2002):

> The implied duty of good faith "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Parker v. The Columbia Bank*, 91 Md.App. 346, 366, 604 A.2d 521 [, *cert. denied*, 327 Md. 524, 610 A.2d 796] (1992). However, the Court of Special Appeals did not go further [in the *Parker* case] and rule that there is a duty requiring affirmative steps beyond those required by the contract itself. *Id.* Therefore, this duty is merely part of an action for breach of contract, *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp. 674 (D.Md.1993), and so, because [one count] already states a claim for breach of contract, [the count purporting to state a claim for breach of the implied duty of good faith] does not state a different claim and will be dismissed.

*See also Baker v. Sun Co.*, 985 F.Supp. 609, 610 (D.Md.1997)("Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing."); Paul Mark Sandler & James K. Archibald, PLEADING CAUSES OF ACTION IN MARYLAND, § 2.1 at 29 (3d ed. 2004)("Maryland does not recognize, however, an independent cause of action for breach of the implied contractual duty of good faith and fair dealing."). A breach of the implied duty of good faith and fair dealing is better viewed as an element of another cause of action at law, *e.g.*, breach of contract, than as a stand-alone cause of action for money damages, and we conclude that no independent cause of action at law exists in Maryland for breach of the implied duty of good faith and fair dealing.

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY ON THE COUNT OF BREACH OF**

GOOD FAITH AND FAIR DEALING IS AFFIRMED, BUT THE JUDGMENT IS OTHERWISE VACATED. THE CASE IS REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–FOURTH BY APPELLANT AND THREE–FOURTHS BY APPELLEE.