# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| AGNIESZKA KOSTYSZYN, | ) | |
| and MAREK KOSTYSZYN | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. N14C-08-010 PRW |
| | ) | |
| GIANMARCO MARTUSCELLI, | ) | |
| GILDA MARTUSCELLI, | ) | |
| the ESTATE OF BRETT J. HARRIS | ) | |
| FROZEN ENDEAVORS, INC., | ) | |
| a Delaware Corporation, | ) | |
| AJT, INC., a Delaware Corporation, | ) | |
| CHESAPEAKE INN, INC., | ) | |
| a Maryland Corporation. | ) | |
| Defendants. | ) | |

Submitted: December 8, 2014
Decided: February 18, 2015

## MEMORANDUM OPINION AND ORDER

*Upon Defendants' Motion to Dismiss Plaintiffs' Complaint,*
**GRANTED.**

Gregory D. Stewart, Esquire, Law Office of Gregory D. Stewart, P.A., Wilmington, Delaware, Attorney for Plaintiff.

Brian M. Gottesman, Esquire (argued), Michael W. McDermott, Esquire, Suzanne H. Holly, Esquire, Berger Harris LLP, Wilmington, Delaware, Attorneys for Defendants.

**WALLACE, J.**

## I. INTRODUCTION

Before the Court is Defendants Gianmarco Martuscelli, Gilda Martuscelli, the Estate of Brett J. Harris, Frozen Endeavors, Inc., AJT, Inc., and Chesapeake Inn, Inc.'s (collectively the "Defendants") motion to dismiss. Plaintiffs Agnieszka Kostyszyn and Marek Kostyszyn (together the "Plaintiffs") currently own and operate Paciugo Gelato and Café ("Paciugo"). They purchased the business from Defendants and now allege that Defendants committed fraud during its sale and have breached their duties under the sale's agreement. Because the Plaintiffs have failed to meet the required pleading standards for all claims, the Court **GRANTS** the Defendants' motion to dismiss.[1]

## II. FACTS AND PROCEDURAL BACKGROUND

In late 2011, Plaintiffs approached the owners of Paciugo about the possibility of opening up a franchise.[2] Plaintiffs met with Gianmarco Martuscelli ("Mr. Martuscelli"), principal of Frozen Endeavors, Inc. ("Endeavors"), and B.J. Harris (now deceased).[3] Messrs. Martuscelli and Harris presented Plaintiffs with a

---

[1] At oral argument, Defendants argued that only Frozen Endeavors was properly named and all claims were improperly brought against the other defendants. Because Plaintiffs have failed in substance to file an adequate complaint, the Court need not determine who are the proper defendants to the action.

[2] *See* Plf.'s Answering Br. at 1.

[3] *See* Compl. at ¶ 14.

profit statement for Paciugo ranging from July 2010 to August 2011.[4]  The profit statement reflects a profit ("net with payroll") of $7,186.21 and details Paciugo's retail sales, catering sales, rent cost, insurance cost, ingredient costs, royalties paid, and payroll for those months.[5]

On December 1, 2011, Plaintiffs purchased Paciugo from Endeavors for $272,500, which they paid in three installments.[6]  The Martuscellis were not a party to the Agreement of Sale ("Agreement"); only Plaintiffs and Endeavors signed the contract.[7]  The contract provided, in part, that Mr. Martuscelli's other businesses, Chesapeake Inn ("Chesapeake") and Canal Creamery & Sweet Shoppe ("Creamery"), and Mr. Martuscelli's parents' business, La Casa Pasta, would continue purchasing gelato from Paciugo.  Section 5(d) of the agreement states:

> Seller shall continue to purchase gelato for Chesapeake Inn, Canal Creamery & Sweet Shoppe and La Casa Pasta for a period of ten years so long as Buyer does not breach its obligations under this Agreement or the companion note and security agreement or Buyer's lease with Christiana Mall, LLC.[8]

---

[4]     *See* Profit Statement, Ex. 1 to Compl.

[5]     *See id.*

[6]     *See* Agreement of Sale ("Agreement"), Ex. 2 to Compl., at 1.

[7]     *See id.* at 11.

[8]     *See id.* at 3.

The present dispute arose when Paciugo's sales declined after Plaintiffs purchased the business. Plaintiffs claim that gelato sales to Chesapeake, La Casa Pasta, and the Creamery immediately dropped in 2012 to $18,475[9] and further declined in 2013 to $3,300.[10] The Creamery reportedly stopped purchasing altogether from Paciugo in April 2013 when Mr. Martuscelli, who held a three-year lease for the Creamery, sold his interest in the business prior to the termination of the lease.[11] In an email exchange with the Plaintiffs, Mr. Martuscelli explained he never owned but only had a lease on the Creamery, and that he sold his interest because the Creamery had been losing money for the preceding two years.[12] In that email, Mr. Martuscelli wrote:

> I lost money at Paciugo and the Creamery but I tried to [sic] my best and it wasn't good enough. BJ and I sold Paciugo because we were both losing too much money (BJ lost all his savings and had nothing left). We sold you the business while still owing the bank over $70k in a loan that I just finished paying off this year. We didn't make any money from you or anything associated with Paciugo. We were absentee owners who couldn't afford to pay the bills any longer.[13]

---

[9] *See* Compl. at ¶ 17.

[10] *See id.* at ¶ 22.

[11] *See* Def's. Mot. to Dismiss at 7.

[12] Compl. at ¶¶ 21, 23.

[13] *Id.* at ¶ 24.

After receiving that email, Plaintiffs commenced this suit in the Court of Chancery, alleging both equitable and legal claims. The Court of Chancery dismissed the Plaintiffs' equitable fraud claim with prejudice and dismissed the remaining legal claims without prejudice for lack of subject matter jurisdiction.[14] Plaintiffs now bring legal claims they enumerate as follows: (1) Breach of Contract; (2) Breach of Warranty; (3) Indemnification; (4) Fraud; (5) Negligent Misrepresentation; (6) Intentional Misrepresentation; and (7) Breach of Implied Covenant of Good Faith and Fair Dealing.[15]

## III. STANDARD OF REVIEW

Generally, a plaintiff must plead the facts with "reasonable conceivability" to survive a motion to dismiss.[16] When considering a motion to dismiss under Rule 12(b)(6), the Court will:

---

[14] *See Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *7 (Del. Ch. July 14, 2014) (declining to engage clean up doctrine to address Plaintiffs' legal claims, but allowing Plaintiffs to transfer them to Superior Court).

[15] *See* Compl. Plaintiffs also contend that Frozen Endeavors is a void entity and therefore lacks standing to move to dismiss. They cite no authority for that argument. Nonetheless, Frozen Endeavors filed a Certificate of Revival in 2014. That certificate retroactively validated all of Frozen Endeavors' actions taken during the time period the corporation was void. *See* DEL. CODE ANN. tit. 8, § 312(e) (2013) (reinstatement by Certificate of Revival "shall validate all contracts, acts, matters and things made, done and performed" by a corporation while its certificate of incorporation was forfeited or void).

[16] *WP Devon Assocs. v. Hartstrings, LLC*, 2012 WL 3060513, at *3 (Del. Super. Ct. July 26, 2012) (citing *Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 2012 WL 172844, at *1 (Del. Jan. 20, 2012)).

(1) accept all well pleaded factual allegations as true; (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim; (3) draw all reasonable inferences in favor of the non-moving party; and (4) [not dismiss a claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[17]

The Court may dismiss a claim if a plaintiff fails to plead an element of that claim.[18]

Under Rule 9(b), a plaintiff bringing a fraud or misrepresentation claim must plead it with particularity—a heightened pleading standard.[19] The plaintiff must plead:

(1) a false representation, usually of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) [that] the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[20]

---

[17] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (stating standard for motions to dismiss).

[18] *See Harris v. Dependable Used Cars, Inc.*, 1997 WL 358302, at *2-3 (Del. Super. Ct. March 20, 1997); *Wolstenholme v. Hygenic Exterminating Co., Inc.*, 1988 WL 77655, at *1-2 (Del. Super. Ct. July 5, 1988); *see also Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *6 (Del. Ch. Apr. 30, 2014).

[19] Super Ct. Civ. R. 9(b); *Universal Capital Mgmt. Inc. v. Micco World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Ct. Feb. 1, 2012).

[20] *Id.* (citing *Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *4 (Del. Super. Ct. Apr. 26, 2001)).

The plaintiff must also state the "time, place, and contents of the fraud," as well as identify the person accused of committing the fraud.[21]

## IV. PARTIES' CONTENTIONS

After the Court of Chancery dismissed Plaintiffs' legal claims they filed suit in this Court alleging that Defendants falsely represented the catering revenue and financial condition of Paciugo, causing them to pay more for the business.[22] They further claim Defendants breached their obligations under the sales agreement by failing to have their businesses purchase gelato at the same rate they did prior to the Paciugo sale.[23]

Defendants move to dismiss Plaintiffs' Complaint in its entirety. Defendants argue that they have not breached their obligations under the Agreement.[24] Further, Defendants say, Plaintiffs have not specifically alleged which of Defendants' representations, made during the sale's negotiations, were false so as to provide the support required for the fraud, negligent misrepresentation, and intentional misrepresentation claims.[25]

---

[21] *See id.* (listing elements of a fraud claim).

[22] *See* Compl. at ¶ 25.

[23] *See id.* at ¶ 36.

[24] *See* Def's. Mot. to Dismiss at 13.

[25] *See id.* at 9.

## V. DISCUSSION

### A. The Agreement is governed by Maryland law.

The parties disagree as to whether Delaware or Maryland substantive law governs Plaintiffs' claims. The Agreement contains varied (and seemingly conflicting) choice of law provisions: Section 9(a) states that the agreement shall be enforced "to the fullest extent permissible under Maryland or Delaware law"; while the governing law provision in Section 9(i) says that the contract "will be governed by, and construed and enforced in accordance with, the laws of the state of Maryland."[26] The Court finds the latter to be the clearer expression of the parties' intended choice of "governing" law and to control here.

Delaware courts "are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction."[27] Maryland law has a material relationship to this contract because thereunder Plaintiffs sell (or sold) gelato to two Maryland businesses and the Agreement's negotiations, during which the alleged fraud or misrepresentation occurred, took place at the Chesapeake Inn in Maryland.[28] Because the Agreement explicitly designates the

---

[26]  *See* Agreement, at 6.

[27]  *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1046 (Del. Ch. 2006).

[28]  *See* Compl. at ¶ 27 (stating Chesapeake Inn, a Maryland corporation with its principal place of business in Maryland, purchases gelato from Paciugo).

laws of Maryland as the governing law of the contract, this Court will apply Maryland substantive law.

**B. Maryland law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing.**

Maryland contract law recognizes an implied covenant of good faith and fair dealing.[29] It does not, however, recognize an independent cause of action for a breach of that implied covenant.[30] Because no cause of action exists for the Plaintiffs' claim under the governing law of the contract, it must be dismissed. Defendants' motion is therefore **GRANTED** as to the breach of implied covenant of good faith and fair dealing claim.

**C. Plaintiffs fail to adequately allege breach of contract.**

Plaintiffs brought three breach of contract claims: breach of contract, breach of warranty, and indemnification.

---

[29] *See Greenfield v. Heckenbach*, 797 A.2d 63, 81 (Md. Ct. Spec. App. 2002) (citing *Keller v. A .O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 73 (Colo. 1991)) (recognizing implied covenant of good faith and fair dealing).

[30] *See Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997) (stating Maryland does not explicitly recognize an independent cause of action for the implied contractual duty of good faith and fair dealing); *Mt. Vernon Props., LLC. v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. Ct. Spec. App. 2006) ("[T]here is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing.").

Even recognizing the low burden imposed to survive dismissal,[31] Plaintiffs' pleadings do not demonstrate how Defendants have breached the Agreement and how, on these breach claims, they, Plaintiffs, may recover under any reasonably conceivable set of circumstances susceptible of proof. The contract requires Defendants to purchase gelato for the Chesapeake Inn, Creamery, and La Casa Pasta for ten years.[32] Plaintiffs attempt to engraft to the Agreement a requirement that Defendants purchase gelato in the amounts reflected in the Profit Statement and refrain from purchasing competing products, such as ice cream.[33] But the Profit Statement is just that—an accounting of the business's profits for a certain period. There is neither an allegation nor evidence it was to be part of the Agreement.

The contract does not specify any amount of gelato that must be purchased. Nor does the contract state that Defendants must continue to purchase gelato for a non-operating business or refrain from purchasing ice cream. Plaintiffs admit that the Chesapeake Inn and La Casa Pasta still purchase gelato from Paciugo, although in smaller amounts.[34] Plaintiffs also admit that Defendants bought gelato for the

---

[31]    *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

[32]    *See* Profit Statement.

[33]    *See* Compl. at ¶¶ 35-36.

[34]    *See id.* at ¶¶ 27, 35-36.

Creamery following the Paciugo sale.[35] Even drawing reasonable inferences in favor of the Plaintiffs, they could not recover for breach of contract under any reasonably conceivable set of circumstances because Plaintiffs admit that Defendants still purchase gelato according to the terms of the contract for the businesses that Defendants still operate. The Court need not "accept every strained interpretation of the allegations proposed by the [P]laintiff[s]."[36] Plaintiffs here have failed to plead facts supporting a finding of a breach of an obligation under the Agreement, which is, of course, an essential element of their breach of contract claim.[37] The claim must be dismissed.

In addition, the breach of warranty and indemnification claims must be dismissed. Plaintiffs complain that Defendants' alleged "improper accounting and other business practices resulting in an overstatement of profits and revenues substantially inflated revenue projections" constituted breaches of warranties in the contract.[38] Although the Court must accept all well-pleaded factual allegations as true, "allegations that are merely conclusory and lacking factual basis, [ ] will not

---

[35]     *See id.* at ¶ 17.

[36]     *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[37]     *See VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2006) (listing essential elements for a breach of contract claim as (1) the existence of a contract, (2) the breach of an obligation imposed by the contract, and (3) damage to the plaintiff).

[38]     *See* Compl. at ¶ 44.

survive a motion to dismiss."[39]   Plaintiffs have pled no *facts* showing that

Defendants utilized improper accounting practices.   Nor have they pled facts

showing how the profits or revenues were inflated.  They simply allege that the

sales in years following the sale of the franchise did not meet the same level as the

sales in previous years.   Absent the necessary specific allegations of fact for

Plaintiffs' claims that Defendants breached an express warranty in the contract, the

breach of warranty and indemnification claims must also be dismissed.[40]

Defendants' motion is **GRANTED** as to the breach of contract, breach of

warranty, and indemnification claims.

### D.   Plaintiffs' fraud and intentional misrepresentation claims lack reference to a false statement made by Defendants.

A plaintiff must state the "time, place, and contents" of the fraud or

misrepresentation alleged and allege that the defendant's representation was false

to plead a claim with particularity as required by Rule 9(b).[41]   In this case,

Plaintiffs have merely stated that Defendants presented them with false financial

---

[39]    *See Brevet Capital Special Opportunities Fund, LP v. Fourth Third, LLC*, 2011 WL 3452821, at *6 (Del. Super. Ct. Aug. 5, 2011) (quoting *Criden v. Steinberg*, 2000 WL 354390, at *2 (Del. Ch. Mar. 23, 2000)).

[40]    *Lord v. Souder,* 748 A.2d 393, 398 (Del. 2000) ("Where allegations are merely conclusory . . . (*i.e.,* without specific allegations of fact to support them) they may be deemed insufficient to withstand a motion to dismiss.").

[41]    *See Universal Capital Mgmt. Inc. v. Micco World, Inc.*, 2012 WL 1413598, at *2 (Del. Super. Ct. Feb. 1, 2012).

information using improper accounting methods[42] without pleading adequate facts informing how the records were false. Plaintiffs do not specify the time, place, and contents of the alleged fraud as required. They instead generalize that "information regarding the financial condition, operating results, revenue, income and expenses" of the business was false.[43] Plaintiffs indicate neither how Defendants' accounting methods were improper nor how the one financial statement Plaintiffs relied on in purchasing the franchise was inaccurate. They have not specified any false statements made by Defendants nor that Defendants knew or believed their statements to be false. In short, Plaintiffs have failed to plead multiple elements of their fraud claims. Accordingly, the fraud and intentional misrepresentation claims must be dismissed.

Defendants' motion is **GRANTED** as to fraud and intentional misrepresentation claims.

### E. Without an "intimate nexus," there can be no claim of negligent misrepresentation.

Maryland law requires a plaintiff alleging negligent misrepresentation to plead all the elements of fraud plus the existence of an "intimate nexus."[44] To

---

[42] *See* Compl. at ¶¶ 53-56.

[43] *See id.* at ¶ 55.

[44] *See Weisman v. Connors*, 540 A.2d 783, 792 (Md. 1988) (defining "intimate nexus" as "contractual privity or its equivalent").

show an intimate nexus, the plaintiff must demonstrate that the defendant owed the plaintiff a duty of care by showing contractual privity or its equivalent.[45] Plaintiffs have failed to plead the existence of an intimate nexus; there are no facts pled demonstrating that Defendants owed Plaintiffs a specific duty of care in this instance. As the Court of Chancery determined, the parties engaged in an arm's length transaction. Neither in Chancery, nor here, have Plaintiffs pled "the existence of a fiduciary, special, or confidential relationship between the parties."[46] In turn, they have failed to plead the existence of an "intimate nexus" as required under Maryland law.[47] Therefore, the negligent misrepresentation claim must be dismissed[48] and the Defendants' motion as to that claim is **GRANTED.**

---

[45] *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 571 (D. Md. 2012) ("When dealing with claims of economic loss due to negligent misrepresentation, a plaintiff must prove the defendant owed a duty of care by demonstrating an intimate nexus . . . demonstrated by showing contractual privity or its equivalent.").

[46] *Kostyszyn v. Martuscelli*, 2014 WL 3510676, at *5 (Del. Ch. July 14, 2014).

[47] *Gresi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 553-56 (Md. 2000).

[48] *See, e.g.*, *In re Asbestos Litigation (Fluitt)*, 2014 WL 600638 (Del. Super. Ct. Jan. 29, 2014) (complaint in asbestos matter, to which Florida substantive law applied, insufficient when it failed to state the essential elements of plaintiffs' claims, which Delaware's pleading standard requires, under Florida's applicable statute).

**VI. CONCLUSION**

While the missing required elements for each of the several claims may differ, Plaintiffs cannot, under the Complaint and its allegations as pled, recover under any reasonably conceivable set of circumstances susceptible to proof. The Defendant's Motion to Dismiss Plaintiffs' Complaint is **GRANTED**, and all of the Plaintiffs' claims are **DISMISSED.**

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
**PAUL R. WALLACE, JUDGE**


Original to Prothonotary
cc:    All counsel via File & Serve