WAL–MART STORES, INC. and Sam's East, Inc., Appellants,

v.

Elena LOPEZ, Liberty Morales, Chad Matthews, James Veillon, and All Others Similarly Situated, Appellees.

No. 14–02–00451–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 14, 2002.

---

Lynne Liberato and Diana L. Davis, Houston, for Appellants.

Franklin D. Azar, Jim Adler, Houston, Michael M. Phillips, Angleton, for Appellees.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FOWLER.

## OPINION

J. HARVEY HUDSON, Justice.

In this interlocutory appeal, Wal–Mart Stores, Inc. and Sam's East, Inc. (collectively, "Wal–Mart") appeal the trial court's order granting class certification to Elena Lopez, Liberty Morales, Chad Matthews, and James Veillon, on behalf of themselves and all others similarly situated. Because individual issues will predominate over common issues, and the class action is not the superior method for litigating appellees' claims, the trial court abused its discretion in granting the class certification and, accordingly, we reverse the order and remand the case to the trial court.

### I. BACKGROUND

Appellees allege that due to uniform Wal–Mart policy they were required to work through rest and meal breaks and to work "off-the-clock" without pay. Appellees seek to represent a class consisting of all current and former hourly employees who were employed by Wal–Mart and Sam's Club in Texas after June 23, 1996. There are 264 Wal–Mart and 61 Sam's Club stores in Texas. The proposed class consists of approximately 350,000 current and former employees.

Each applicant for employment with Wal–Mart must complete and sign an employment application. By signing the Wal–Mart employment application, each applicant states his understanding that any employment relationship with Wal–Mart is "at-will":

[T]his application is not a contract, offer, or promise of employment and that if hired I will be able to resign at any time for any reason. Likewise, the company can terminate my employment at any time with or without cause. I further understand that no one other than the President of Wal–Mart Stores, Inc., or Vice President of its People Division has the authority to enter into an employment contract or agreement with me, . . .

Once an applicant has been hired by Wal–Mart, he or she is required to attend an orientation session conducted by Wal-Mart personnel managers. Each new employee is given an employee handbook setting forth policies and procedures for Wal–Mart employees. The employee handbook states the following with regard to rest and meal breaks:

Associates will be provided break and meal periods during their scheduled work shift. Associates are paid for up to two break periods per work shift. No associate should work over six hours without taking at least a 30–minute meal period. Remember to clock in and out for meal periods.

Associates should not be required nor requested to perform work during their break and/or meal periods.

Where state law requires additional or more frequent break/meal periods will be followed [sic].[1]

With regard to work performed off-the-clock, the employee handbook further states:

---

1. Rest breaks are paid, while meal breaks are unpaid.

Managing Your Time. This is one of your responsibilities. Our expectation is very clear. Always clock in to begin your workday and at other appropriate times; ask your Supervisor for specific details. If you forget to do this, notify your Supervisor immediately so corrections can be made. Your hard work is appreciated, and we want to pay you for this work. Remember that working off the clock is not only against Wal–Mart policy—it's against the law. Always clock in when you are working—Always! There are no exceptions.

Each new employee is required to sign the following acknowledgment contained in the employee handbook, which sets forth the employee's understanding that the policies and benefits explained in the employee handbook are not terms and conditions of employment:

This handbook is intended solely as a general information guide to let Associates know about the current policies and programs Wal–Mart has in place. The policies and benefits presented in this handbook are for your information and do not constitute terms or conditions of employment.... This handbook is not a contract. From time to time, Wal–Mart may determine that it needs to change some of the policies or programs in this handbook in order to better meet the requirements of our Associates and the Company. If any policies or programs are changed, modified, deleted, or supplemented, Wal–Mart will notify Associates as soon as possible.

I acknowledge that I have received and read this handbook as well as this Acknowledgment, and that I had the opportunity to ask my Manager questions about both and that I fully understand the contents of both as they relate to my employment with Wal–Mart. I understand that the information contained in this handbook are guidelines only, and are in no way to be interpreted as a contract.

Appellees allege Wal–Mart had a common oral contractual obligation to provide rest and meal breaks and to pay its hourly employees for all work performed, but breached that obligation through a uniform policy of depriving employees of rest and meals breaks and forcing employees to work off-the-clock without pay. In its order granting class certification, the trial court determined appellees had satisfied all prerequisites to class certification. Wal–Mart brings this interlocutory appeal asserting the trial court abused its discretion in granting class certification.

## II. STANDARD OF REVIEW

 The trial court's ruling on class certification is reviewed for abuse of discretion. *Texas Dep't of Transp. v. Barrier*, 40 S.W.3d 153, 156 (Tex.App.-Houston [14th Dist.] 2001, no pet.). The trial court abuses its discretion when it (1) does not properly apply the law to the undisputed facts; (2) acts arbitrarily or unreasonably; or (3) rules on factual assertions not supported by the record. *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

 While the trial court's ruling on class certification is subject to abuse of discretion, there is no right to proceed as a class action. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 439 (Tex.2000). Instead, the plaintiff must satisfy all requirements for certification of the class as set forth in Rule 42 of the Texas Rules of Civil Procedure. TEX.R. CIV. P. 42; *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex. 2000). The class action must first meet the four threshold requirements set forth in Rule 42(a): (1) numerosity (the class is so numerous that joinder is impracticable);

(2) commonality (there are common questions of fact and law); (3) typicality (the representative's claims are typical of the class); and (4) adequacy of representation (the representative parties will protect the interests of the class). TEX.R. CIV. P. 42(a). Additionally, the class action must satisfy at least one of the four categories found in Rule 42(b). TEX.R. CIV. P. 42(b). With respect to the Rule 42(b) requirement, appellees proceeded under 42(b)(4), which provides "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX.R. CIV. P. 42(b)(4).

### III. ANALYSIS

#### A. Predominance

■■■■ Questions common to the class are those questions that, when answered as to one class member, are answered as to all class members. *Union Pac. Res. Group, Inc. v. Hankins,* 51 S.W.3d 741, 750 (Tex.App.-El Paso 2001, pet. filed); *Spera,* 4 S.W.3d at 810. The threshold for commonality is not high. *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 33 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Commonality does not require that all questions of law and fact must be identical, but only that an issue of law or fact exists that inheres in the complaints of all class members. *Union Pac. Res. Group, Inc.,* 51 S.W.3d at 750; *Graebel/Houston Movers, Inc.,* 26 S.W.3d at 33; *Spera,* 4 S.W.3d at 811.

■■■■ As noted above, appellees proceeded under Rule 42(b)(4), which requires common questions of law or fact of the class to predominate over any questions affecting only individual members. TEX.R. CIV. P. 42(b)(4). Because the predominance requirement is far more demanding than the commonality requirement, it acts as a check on the more flexible commonality test. *Bernal,* 22 S.W.3d at 435 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Therefore, because the predominance requirement is so stringent, we must consider it first. *Id.* at 433; *see also West Teleservices, Inc. v. Carney,* 75 S.W.3d 455, 459 n. 6 (Tex.App.-San Antonio 2001, no pet.) (stating predominance and commonality inquiries are subsumed into one).

■■■■ Predominance is determined by identifying the substantive issues of the case that will control the outcome of the litigation, assessing which issues will predominate, and determining if the predominating issues are common to the class. *Bernal,* 22 S.W.3d at 434. The test for predominance is not whether common issues outnumber uncommon issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Id.* (quoting *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 610 (Tex.App.-Corpus Christi 1998, writ dism'd w.o.j.)). "If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate." *Id.* Thus, a judgment in favor of the class should settle the entire controversy and all that should remain is for the other class members to file their proof of claim. *Id.* (quoting *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.-Fort Worth 1986, no writ)).

Rule 42(b)(4) sets forth a non-exhaustive list of factors for guiding the court in determining the predominance requirement: (A) the interest of members of the

class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Tex.R. Civ. P. 42(b)(4)(A)-(D).

### 1. Class Certification Order

The trial court concluded there are "uniform policies and practices regarding hourly employees throughout the Wal–Mart system sufficient, in the Court's opinion, to satisfy the commonality requirement of Rule 42(a)(2)." Specifically, the trial court determined there is evidence (1) Wal–Mart's hourly employees were hired under similar circumstances pursuant to uniform policies and procedures adopted and implemented by Wal–Mart on a company-wide basis; (2) Wal–Mart's hourly employees are in the same legal and economic position; (3) Wal–Mart has a consistent policy and practice of managing its hourly employees and regulating their hours of work in a uniform company-wide manner; and (4) Wal–Mart has a uniform policy for compensating management personnel based on store profitability, which is affected by the expense of running each store.

Rejecting Wal–Mart's contention that individual issues involving contract formation will predominate over common issues, the trial court concluded the resolution of contract formation issues will affect the legal position of the entire class and can be resolved during the trial on the merits. Further with respect to Wal–Mart's assertion that individual inquiries as to fact situations surrounding each claim for missed breaks and off-the-clock work would predominate over common issues,

the trial court stated it would allow the plaintiffs to present scientific evidence in the form of statistical analysis of Wal–Mart's records and a random survey of current and former Wal–Mart employees. The trial court determined Wal–Mart's challenge to the reliability of such scientific data is a common issue that can be resolved during the trial on the merits. Thus, the trial court ordered the case be tried in two phases with liability and aggregate damages to the class determined by a jury in the first phase, and individual damage recoveries determined in the second phase by the adoption of a proof of claim form and individual hearings conducted by a special master or "some other manageable means for the distribution to individuals of individual damages."

### 2. Missed Breaks

 Appellees allege Wal–Mart had a common oral contractual obligation to provide rest and meal breaks. Wal–Mart contends appellees must prove the formation, existence, content, validity, and enforceability of each individual oral contract between Wal–Mart and each of the 350,000 class members. Thus, according to Wal–Mart, any attempt to prove the terms of the contracts were "common" to the class would overwhelm this case with individual issues of "highly individualized evidence of each Plaintiff's thought processes, expectations and negotiations with individual managers." We agree.

 The elements of written and oral contracts are the same and must be present for a contract to be binding. *Bank of El Paso v. T.O. Stanley Boot Co.,* 809 S.W.2d 279, 284 (Tex.App.-El Paso 1991), *aff'd in part, rev'd in part on other grounds,* 847 S.W.2d 218 (Tex.1992). The following elements are required for the formation of a binding contract: (1) an offer, (2) acceptance in strict compliance

with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P. v. Gonzalez,* 64 S.W.3d 519, 522 (Tex.App.-Corpus Christi 2001, no pet.); *Komet v. Graves,* 40 S.W.3d 596, 600 (Tex. App.-San Antonio 2001, no pet.).

For an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms. *Ludlow v. DeBerry,* 959 S.W.2d 265, 272 (Tex.App.-Houston [14th Dist.] 1997, no writ). The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did—and not on their subjective state of mind. *Adams v. H & H Meat Prods., Inc.,* 41 S.W.3d 762, 771 (Tex.App.-Corpus Christi 2001, no pet.); *Angelou v. African Overseas Union,* 33 S.W.3d 269, 278 (Tex. App.-Houston [14th Dist.] 2000, no pet.). In determining mutual assent, the court considers the communications between the parties and the acts and circumstances surrounding those communications. *Komet,* 40 S.W.3d at 601; *Angelou,* 33 S.W.3d at 278.

Wal–Mart asserts appellees' common oral contract claims raise a number of issues that "would elicit factually distinct responses from the 350,000 class members," including the identity and position of the offeror, the class member's belief as to the authority of the offeror to make an offer in light of the disclaimers about contracts contained in the employee handbook, the circumstances under which the offer was made, and the terms and conditions of the offer.

In *Basco v. Wal–Mart Stores, Inc.,* a federal district court denied class certification for a proposed class of current and former employees employed by Wal–Mart and Sam's Club in Louisiana on claims for breach of contract for missed meal and rest breaks and off-the-clock work. *Basco v. Wal–Mart Stores, Inc.,* 216 F.Supp.2d 592 (E.D.La.2002). The plaintiffs in *Basco* claimed Wal–Mart (1) entered into oral contracts with its hourly employees at the time of hiring, agreeing to provide rest and meal breaks and pay them for all hours worked, and (2) breached that contractual obligation throughout its Louisiana stores through a uniform policy requiring employees to miss rest and meal breaks and work off-the-clock. *Id.* at 596–97.

Denying class certification, the *Basco* court explained the plaintiffs' allegations that Wal–Mart entered into individual oral contracts for rest and meal breaks with each of the approximately 100,000 class members during their orientation sessions and subsequently breached those contracts would depend on the resolution of highly specific issues, including: (1) whether Wal–Mart's employees made offers to the plaintiffs, (2) if so, whether those offerors had apparent or actual authority to make the offers, (3) what the conditions of the offers and terms agreed to by the parties were, and (4) whether, and to what extent, each contract was breached. *Id.* at 602. With respect to the plaintiffs' argument that Wal–Mart had a system-wide policy to enter into those contracts with its employees, the court explained:

> every "contract" at issue in this case was created at a different time, by different employees, and under different circumstances. At trial, each plaintiff will be required to establish the existence of a contract with [Wal Mart] through offer and acceptance and prove the terms of the contract and it is possible that no two plaintiffs' allegations concerning the formation or terms of their contract will be the same.

*Id.* Thus, the plaintiffs' argument that liability issues for their breach of contract claims against Wal–Mart would predominate over individual damages each plaintiff would receive ignored "the plethora of individual issues that must be resolved before damages are considered." *Id.*

As in *Basco*, individual issues regarding the formation of 350,000 contracts in this case will predominate over any common issues. Appellees claim Wal–Mart made express contractual offers of rest and meal breaks during the orientation process. Because each orientation session was conducted by different Wal–Mart personnel at different stores, proof of an oral contract with each class member will require a determination of the terms of the contract through offer and acceptance. Any determination concerning a "meeting of the minds" necessarily requires an individual inquiry into what each class member, as well as the Wal–Mart employee who allegedly made the offer, said and did. A determination must also be made as to the authority of each Wal–Mart manager who allegedly made such an offer and each employee's belief regarding whether that manager had or lacked authority to make the offer.

Even if appellees establish Wal–Mart had 350,000 oral contracts to provide rest and meal breaks, individual issues regarding the alleged breach of each contract will also predominate over common issues. Affidavits of current and former Wal–Mart employees submitted by appellees raise individual issues. For example, a number of employees state they missed rest and meal breaks, but offer no explanation for why they missed their breaks, *i.e.*, whether

store management required the employee to work through the break or whether the employee voluntarily chose not to take a break for personal reasons, or why no time adjustment request form was submitted to reflect the hours worked so the employee could be appropriately compensated.[2]

 In addition to claiming an express contractual obligation for rest and meal breaks, appellees allege the existence of an implied-in-fact contract for rest and meal breaks. Appellees claim Wal–Mart made an offer of rest and meal breaks to its employees during the orientation process and the employees accepted that offer by working for Wal–Mart. An implied-in-fact contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972). A meeting of the minds is an essential element of an implied-in-fact contract. *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 133 (Tex.2000). In an express contract, mutual agreement is expressly stated; in an implied contract, mutual agreement must be inferred from the circumstances of the transaction. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex.App.-San Antonio 1997, no writ); *T.O. Stanley Boot Co.*, 809 S.W.2d at 284. The court "must look to the conduct of the parties to determine the terms of the contract on which the minds of the parties met." *Williford Energy Co. v. Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 385 (Tex.App.-Amarillo 1994, no writ). The

**2.** Wal–Mart submitted affidavit testimony from employees who state whether they take a rest break or if they take a shorter meal break is of their own choosing. Some employees state if they are called back to work before their rest break is over they can finish

the break at a later time. If they are called back to work before their meal break is over, they can clock back in and are paid for that work or they can submit a time adjustment request form to reflect the extra time worked.

conduct and circumstances surrounding the transaction are to be viewed from a reasonable person's interpretation at that particular point in time. *T.O. Stanley Boot Co.*, 809 S.W.2d at 284 (citing *Haws & Garrett Gen. Contractors, Inc.*, 480 S.W.2d at 609).

Appellees contend the method of offer, *i.e.*, via the new-hire orientation, and the method of acceptance, *i.e.*, working for Wal–Mart, are the same for the entire class and predominate over any individual issues regarding contract formation. Determining the existence of an implied-in-fact contract, however, involves consideration of the conduct of the parties and the circumstances surrounding the alleged contract. That inquiry will necessarily involve the same individual issues as in the formation of an express contract such as the terms and conditions of the offer, whether there was a meeting of the minds, and the identity and authority of the Wal–Mart employee who made the offer, as well as whether there was a breach of the alleged contract. We find individual issues concerning the formation of 350,000 contracts and any subsequent breach by Wal–Mart will predominate over any common issues.

### 3. Off–the–Clock Work

██ Wal–Mart also argues that because of the individualized nature of appellees' claims for off-the-clock work, common issues do not predominate over individual

issues. Appellees submitted affidavits of current and former Wal–Mart employees stating they had worked off-the-clock and were not paid for such work. Some employees claim that after clocking out, they sometimes had to wait on management to unlock the exit doors so they could leave the premises; others claimed they attended employee meetings before clocking in. Although some employees state a manager "asked" or "required" them to perform tasks after clocking out, others do not state why they were working off-the-clock. Most employees do not indicate whether they submitted time adjustment request forms so they could be paid for the additional time worked. Furthermore, not all employees state whether store management knew they were working off-the-clock.[3]

In this case, individual inquiry into each class member's claim for off-the-clock work is required. Wal–Mart has the right to inquire into the validity of each claim with regard to the authority of the manager to instruct the employee to work off-the-clock, store management's knowledge of the employee's having performed work off-the-clock, whether the employee, in fact, performed any work off-the-clock, the reason the employee did not submit a time adjustment request form, and whether the employee has a unique animus towards Wal–Mart causing that employee to fabricate his claim.[4]

---

**3.** Wal–Mart presented affidavits from employees who stated they understand Wal–Mart policy prohibits off-the-clock work, they have never been asked to work off-the-clock by any Wal–Mart manager, supervisor, or employee, and they understood that if their time is entered incorrectly, they can request a change by submitting a time adjustment request form to a manager. A few employees stated they voluntarily took work home on occasion, but reported all hours worked and were paid for that work. Wal–Mart also submitted affida-

vits from managers who stated that if they learn of any work done off-the-clock, they require the employee to submit that time for payment and remind the employee that off-the-clock work is prohibited.

**4.** The *Basco* court similarly determined individual issues arising from the "myriad possibilities that could be offered to explain why any one of the plaintiffs worked off the clock" would predominate over common issues. *Basco*, 216 F.Supp.2d at 603; *see also Petty v.*

▮▮▮▮ In an attempt to circumvent the individual nature of their off-the-clock work claims, appellees characterize their claims as a "pattern-or-practice" case similar to employment discrimination cases covered by Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. Appellees contend in a pattern-or-practice case they are not required to offer evidence that each person for whom they will ultimately seek relief was a victim of Wal–Mart's policy; instead, they only need establish such a policy existed. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 360, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (holding, in employment discrimination case under Title VII, plaintiff is not required in initial liability stage to offer evidence that each person who will ultimately seek relief was a victim of employer's discriminatory policy). The burden then shifts to the employer to defeat the prima facie showing of pattern-or-practice. *Id.* If an employer fails to rebut the prima facie case, the trial court may conclude a violation has occurred and determine the appropriate remedy. *Id.* at 361, 97 S.Ct. 1843. If the plaintiffs seek individual relief for the discriminatory practice, the trial court will conduct additional proceedings after the liability stage of the trial to determine the scope of individual relief. *Id.*

▮▮▮▮ This, however, is not a discrimination case and appellees have failed to cite any law applying Title VII principles to a suit involving claims for breach of contract. In any event, even if this were a discrimination case, appellees must still satisfy all prerequisites to class certification. Title VII authorizes the Equal Employment Opportunity Commission ("EEOC") to sue in its own name to secure relief for individuals aggrieved by discriminatory practices forbidden by the Act. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155–56, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). While it is not necessary for the EEOC to comply with the strictures of Rule 23 of the Federal Rules of Civil Procedure,[5] "Title VII, however, contains no special authorization for class suits maintained by private parties." *Id.* at 156, 102 S.Ct. 2364. Rather, an individual seeking to maintain a class action under Title VII must satisfy the prerequisites of class certification. *Id.* Therefore, the assertion that Wal–Mart engaged in a pattern or practice of forcing its employees to work off-the-clock does not relieve appellees of their burden to establish all prerequisites for maintaining a class action.

▮▮▮▮ Appellees also rely on the Fair Labor Standards Act ("FLSA") to avoid the individual nature of their claims. 29 U.S.C. § 201 *et seq.* According to appellees, in a case such as this, where Wal–Mart has not kept accurate employment records, the FLSA provides an evidentiary framework under which they may prove their wage case. Appellees contend each class member must prove that he in fact performed work for Wal–Mart for which he was not compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680,

---

*Wal–Mart Stores, Inc.,* 148 Ohio App.3d 348, 356, 773 N.E.2d 576, 582 (2002) (finding issues were individual as to each plaintiff because of various circumstances under which employees worked off-the-clock and questions of management's knowledge of, and condoning, plaintiffs' working off-the-clock).

**5.** Rule 42 of the Texas Rules of Civil Procedure is modeled after Rule 23 of the Federal Rules of Civil Procedure. *Bernal,* 22 S.W.3d at 433.

687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). The burden would then shift to Wal–Mart to come forward with evidence of the precise amount of the work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* at 687–88, 66 S.Ct. 1187. If Wal–Mart fails to produce such evidence, the court may award damages to the employee, "even though the result may be only approximate." *Id.* Appellees argue this same evidentiary framework applies to this case. Appellees, however, never raised the FLSA in the trial court and, therefore, any reliance on the FLSA to affirm the granting of class certification is waived on appeal. We find individual issues concerning the circumstances surrounding each class member's claim for off-the-clock work will predominate over any common issues.[6]

## B. SUPERIORITY

██ In addition to predominance, Rule 42(b)(4) requires the class action to be superior to other available methods for the fair and efficient adjudication of the controversy. TEX.R. CIV. P. 42(b)(4). Appellees intend to establish their claims for missed breaks and off-the-clock work with the presentation of "statistical analysis of Wal–Mart records and a random survey of the class of current and former Wal–Mart employees." Appellees explain statistical evidence will be used to prove that many breaks were missed and to provide an estimate of the total amount of missed break time as a matter of just and reasonable inference; while a random survey will be used to determine the average number of hours per week of off-the-clock work for each class member.

Wal–Mart maintains that with the use of such evidence, appellees "will prove their case through anonymous, unsworn hearsay testimony from witnesses testifying outside the presence of a jury who are not subject to cross-examination and who have a direct financial incentive to manufacture or embellish their claims." Appellees, on the other hand, argue the trial plan does not violate Wal–Mart's due process rights because a jury will determine Wal–Mart's liability to the entire class and the aggregate amount of damages suffered by the entire class in a single verdict; therefore, Wal–Mart's right to have only one jury pass on a common issue of fact will be satisfied at a trial on the merits. Appellees further contend that once liability and damages have been determined in the aggregate, "the parties will still retain some due process rights to a fair distribution of damage awards to individual class members."[7]

Appellees, however, ignore the fact that such statistical evidence will preclude any individual inquiry in the presence of the jury regarding the formation of each alleged contract or the varied circumstances

---

6. Appellees cite authority from other jurisdictions in which class certification was granted in wage cases. *See, e.g., De Asencio v. Tyson Foods, Inc.,* No. 00–CV–4294, 2002 WL 1585580 (E.D.Pa. July 17, 2002); *Trotter v. Perdue Farms, Inc.,* No. 99–893, 2001 WL 1002448, 2002 U.S. Dist. LEXIS 13212 (D.Del. Aug. 16, 2001). Neither case cited by appellees is applicable here. In *De Asencio,* the court determined common issues would predominate over individuals issues, but did not address any potential defenses that the defendant might raise. *De Asencio,* 2002 WL 1585580, at *3. In *Trotter,* predominance was not at issue. *Trotter,* 2001 WL 1002448, at *1–2, 2001 U.S. Dist. LEXIS 13212, at *3–4.

7. At one point, appellees state the statistical evidence will not be used to establish Wal–Mart's liability, but, instead, will be used only to establish aggregate damages. Contradicting themselves, appellees also state they "intend to use representational testimony, documentary evidence, and statistical evidence to prove Wal–Mart's liability to the entire class for off-the-clock work and missed breaks."

surrounding each employee's missed breaks or off-the-clock work when determining Wal–Mart's liability for any alleged breach of each contract. Nor will Wal–Mart be able to question each employee as to individual issues such as the number of breaks missed, amount of time worked off-the-clock, or amount of wages in front of the jury.[8]

■ The Texas Supreme Court has cautioned that although the class action is intended to advance judicial economy by trying claims together that lend themselves to collective treatment, "[i]t is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery ..." *Bernal,* 22 S.W.3d at 437; *accord Cimino v. Raymark Indus., Inc.,* 151 F.3d 297, 312 (5th Cir.1998) ("[T]he applicability of the Seventh Amendment is not altered simply because the case is [a] ... class action."). Basic to the right to a fair trial is the opportunity to adequately and vigorously present any material claims and defenses. *Id.* Under the trial plan any defenses to contract formation or breach of contract that Wal–Mart intends to raise will not be considered by the jury in its determination of liability and aggregate damages.

Finally, appellees claim they have met the superiority requirement on the ground that class actions are intended to be a cost-effective method of litigating "negative-value" claims. Although recognizing it may not be economically feasible to pursue some claims outside a class action, *Bernal* stressed there is no right to litigate a claim as a class action; rather the trial court may certify a class action only if the plaintiffs satisfy all requirements of Rule 42. *Bernal,* 22 S.W.3d at 439. Because the trial plan will not allow a determination of Wal–Mart's liability and damages as to each employee, thereby violating Wal–Mart's right to a trial before a jury, it is not a superior method to litigate appellees' claims for missed breaks and off-the-clock work.

■ Claimants, however, can seek relief for unpaid wages through the administrative process provided in Chapter 61 of the Texas Labor Code. *See* TEX. LAB.CODE ANN. § 61.051(a) (Vernon 1996) ("Payday Law"). Indeed, the objective of the Payday Law is to deter employers from withholding wages by providing claimants with an avenue for the enforcement of wage claims, which are often too small to justify the expense of a civil lawsuit. *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 192 (Tex.App.-Fort Worth 1995, writ denied). Appellees argue the Payday Law is not a superior method because it (1) has a 180 day statute of limitations for filing a claim with the Texas Workforce Commission ("TWC"), and (2) provides for de novo review of the TWC's final decision. *See* TEX. LAB.CODE ANN. §§ 61.051(c), 61.062(e). Under *Bernal,* Wal–Mart's right to have a jury hear its defenses to appellees claims is not abridged merely because some claims may be barred by the statute of limitations or subject to trial de novo in the trial court.

## IV. CONCLUSION

Because individual issues will predominate over any common issues, and class certification is not the superior method for litigating appellees' claims, the trial court abused its discretion in granting class certification. Therefore, the trial court's class certification order is reversed and the case

---

8. *See Basco,* 216 F.Supp.2d at 604 (rejecting plaintiffs' proposed use of statistics to establish breach of contract action or amount of damages); *Petty,* 148 Ohio App.3d at 356, 773 N.E.2d at 582 (observing because damages will be highly individualized, there is no acceptable method of computing damages on class-wide basis).

is remanded to the trial court for further proceedings consistent with this opinion.